UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
BRIAN PATTERSON,                    :
                                    :
              Petitioner,           :
                                    :
      -against-                     :
                                    :
UNITED STATES OF AMERICA,           :
                                    :
              Respondent.           :
------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/02/2016
```

Nos. 14 Civ. 7624 (JFK)
    12 Cr. 823  (JFK)

**OPINION & ORDER**

APPEARANCES
FOR PETITIONER BRIAN PATTERSON
     Pro Se

FOR RESPONDENT UNITED STATES OF AMERICA
     Preet Bharara, Esq.
     United States Attorney for
     the Southern District of New York
     Of Counsel:  Tatiana R. Martins, Esq.

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Petitioner Brian Patterson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Patterson asserts that he was denied effective assistance of counsel and that a search performed prior to his guilty plea was improper.  For the reasons stated below, Patterson's motion is denied.

### I.  Background

The Court assumes familiarity with the facts of this case, which are set forth more fully in this Court's opinion on Patterson's motion to suppress physical evidence seized pursuant to a warrantless search of his home.  United States v. Patterson,

1

No. 12 Cr. 823 (JFK), 2013 WL 592657, at *1 (S.D.N.Y. Feb. 14, 2013). Briefly stated for the purposes of the present motion, Patterson pleaded guilty to criminal possession of a weapon in the second degree in Bronx County Supreme Court in 2004, where he received a sentence of five years' imprisonment and five years' post-release parole supervision. Id. His parole term began on October 22, 2010, prior to which he was apprised of his parole conditions. Id. Patterson executed a Certificate of Release to Parole Supervision that included the stipulation that he would "permit the search and inspection of [his] person, residence and property." Id.

On August 27, 2012, acting on information from a confidential informant, members of the New York Department of Corrections and Community Supervision ("DOCCS") executed a search of Patterson's residence and discovered a loaded 7.62 mm caliber Norinco Rifle with a thirty-bullet capacity stored in a nylon bag hidden underneath a dresser in Patterson's bedroom as well as a shoebox containing live rounds of ammunition for a .9 mm caliber firearm and Patterson's photo identification. Id.

On October 15, 2012, the Government charged Patterson with being a felon in possession of a weapon in violation of 18 U.S.C. § 922(g). On October 24, 2012, Patterson was arrested and, on November 13, 2012, he was indicted on the same charge. Patterson moved on January 17, 2013, to suppress the physical

evidence associated with the search.  On February 14, 2013, this Court denied Patterson's motion. See id.  On February 21, 2013, Patterson pleaded guilty before this Court to the single count in the November 13, 2012 indictment.  Prior to his plea, the Government provided Patterson with a so-called Pimentel letter. See generally United States v. Pimentel, 932 F.2d 1029 (2d Cir. 1991).  The Government's Pimentel letter advised Patterson of the Government's position that Patterson's sentencing range under the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "U.S.S.G.") would be 46 to 57 months' imprisonment after a three-point offense level reduction for acceptance of responsibility.

At his plea hearing, Patterson stated under oath that his attorney Jerrod Thompson-Hicks of the Federal Defenders of New York explained the charges to him and that he felt he understood them. (Hr'g Tr. 5:12-14, Feb. 21, 2013.)  Patterson stated that he understood that he could persist in his not guilty plea and proceed to trial where he would continue to be represented by a lawyer, but that if the Court accepted his guilty plea there would be no further trial of any kind. (Id. 6:12-8:19.) Patterson specifically asked this Court about the Guidelines, and he expressed his understanding that his Guidelines range was between 46 months and 57 months, but that the Guidelines were not binding on the Court. (Id. 10:22-12:9.)  Patterson expressed

3

satisfaction with his attorney's representation. (Id. 12:10-15.)
He informed the Court that he had not been induced to offer to
plead guilty because of any promise or statement by anybody to
the effect that he would get leniency or because of any
pressure, threat, or force and that he was offering to plead
guilty of his own free will. (Id. 12:16-13:3.)

On August 1, 2013, this Court sentenced Patterson to 48
months' imprisonment followed by two years of supervised
release. (Hr'g Tr. 9:2-5, Aug. 1, 2013.)  The Court recommended
that Patterson be placed in a drug treatment program while he
was incarcerated. (Id. 10:17-19.)  Patterson and his counsel
read and reviewed his Pre-Sentence Report and stated that they
had no objections to it. (Id. 2:12-18.)  The Court advised both
sides of their right to appeal the sentencing determination.
(Id. 10:10-11.)

On September 15, 2014, Patterson moved this Court to
vacate, set aside, or correct his sentence pursuant to 28 U.S.C.
§ 2255.  Patterson moves on two grounds.  First, he challenges
the search conducted at his residence as lacking probable cause
and representing a "conflict of interest" because it was
conducted by both the New York Police Department and DOCCS.
Second, he alleges ineffective assistance of counsel based on
the following alleged failures:  (1) failure of counsel to
notify Patterson of his right to a bail hearing;

(2) "railroad[ing him] into taking 48 months;" (3) failing to inform him of his appeal rights; (4) failing to inform him that, due to the nature of his crime, he would not qualify for a 12-month reduction in his sentence for completing a drug treatment program; and (5) erroneously advising him that he would receive credit for the time he spent in pretrial detention at the Metropolitan Detention Center. (See Pet. 5-9, Patterson, No. 14 Civ. 7624 (filed Sept. 15, 2014), ECF No. 1.)

On October 1, 2014, the Court directed Patterson to file an affirmation within sixty days showing cause why the motion should not be denied as time-barred under 28 U.S.C. § 2255(f). (See Order, Id. (filed Oct. 1, 2014), ECF No. 3.) Patterson filed an unsworn affirmation dated October 25, 2014, detailing his difficulty obtaining his belongings while imprisoned in a New York State correctional facility between August 27, 2012, and September 10, 2013, and health problems arising from an altercation with an inmate in September 2013. (See Aff. 1-3, Id. (filed Nov. 24, 2014), ECF No. 4.) Patterson's affirmation also appended a letter from the Bureau of Prisons explaining that he had made multiple attempts to timely file his motion, but that those attempts were inexplicably returned by the United States Postal Service. (Id. at 4.) On December 4, 2014, this Court determined that Patterson had demonstrated sufficient cause to

excuse his delay. (See Order, Id. (filed Dec. 4, 2014), ECF No. 5.)

On July 29, 2015, this Court ordered that the Bureau of Prisons designate, nunc pro tunc, the New York State correction facility where Patterson was detained from August 27, 2012, to September 10, 2013, as a "place of . . . imprisonment" for the service of his federal sentence. (See Order, Patterson, No. 12 Cr. 823 (filed July 29, 2015), ECF No. 30.)

## II.  Applicable Law

Because Patterson is appearing pro se, the Court construes Patterson's arguments liberally and interprets them to raise the strongest arguments that they suggest. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

### A.  Ineffective Assistance of Counsel

Section 2255 permits a prisoner in federal custody the right to challenge his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).  Because the Sixth Amendment provides criminal defendants with the right to effective assistance of counsel, ineffective assistance of counsel is a basis for relief under § 2255. See Morales v. United States, 635 F.3d 39, 42-43 (2d Cir. 2011).  To prove ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S.

668, 687-89 (1984).  Where, as here, a petitioner has chosen to
accept a plea agreement rather than proceed to trial, the
Strickland test remains the applicable test. See Hill v.
Lockhart, 474 U.S. 52, 58-59 (1985).

   Strickland's first prong requires the petitioner to show
that his counsel's performance was deficient by demonstrating
that it fell below an objective standard of reasonableness.
Strickland, 466 U.S. at 687-88.  This objective standard of
reasonableness is measured under prevailing professional norms.
Id. at 688.

   Strickland's second prong requires the petitioner to show
that his counsel's deficient performance prejudiced the defense.
Id. at 687.  This requires the petitioner to show that there is
a reasonable probability that, but for his counsel's
unprofessional errors, the result of the proceeding would have
been different. Id. at 694.  The Strickland Court defined
"reasonable probability" as "a probability sufficient to
undermine confidence in the outcome." Id.  In the case of a plea
agreement, "the defendant must show that there is a reasonable
probability that, but for counsel's errors, he would not have
pleaded guilty and would have insisted on going to trial." Hill,
474 U.S. at 59.

   "It is hornbook law . . . that [under 28 U.S.C. § 2255] the
burden of proof is on the party seeking relief." Galviz Zapata

7

v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (alterations in original) (quoting Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)).

### B.  An Alleged Pre-Conviction Constitutional Violation

When challenging an alleged pre-conviction constitutional violation, a guilty plea "represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973).  That is, "a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in prior proceedings." United States v. Rubin, 743 F.3d 31, 35 (2d Cir. 2014) (quoting United States v. Garcia, 339 F.3d 116, 117 (2d Cir. 2003)).

### III.  Discussion

### A.  Patterson Has Not Established That He Received Ineffective Assistance of Counsel Because He Cannot Demonstrate Prejudice

Patterson's ineffective assistance claim fails because he cannot demonstrate that he suffered prejudice because of any of the alleged conduct.  "The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose

8

of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

In order to demonstrate prejudice, Patterson must show a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. See Hill, 474 U.S. at 59. Patterson alleges several grounds for his ineffective assistance of counsel claim including that his counsel: (1) failed to notify him of his right to a bail hearing; (2) "railroaded [him] into taking 48 months;" (3) failed to inform him of his appeal rights; (4) failed to inform him that, due to the nature of his crime, he would not qualify for a 12-month reduction in his sentence for completing a drug treatment program; and (5) erroneously advised him that he would receive credit for the time he spent in pretrial detention at the Metropolitan Detention Center. Patterson's claims, in essence, fall into two categories. First, that his counsel failed to advise him of certain pretrial and postsentencing rights. Second, that his counsel's alleged failures led him to believe that he would receive a lesser sentence than the one imposed. Patterson has not established that either category of claims has prejudiced him such that he was denied effective assistance of counsel.

1.  **Patterson's Claims That His Counsel Failed to Advise Him of
    Certain Pretrial and Postsentencing Rights**

Patterson has not established that his counsel's alleged
failure to advise him of pretrial and postsentencing rights
prejudiced him.

First, Patterson asserts that his counsel's assistance was
ineffective because he was not advised of his right to a bail
hearing.  Patterson provides no evidence that he would have
sought bail or that his release on bail would have affected his
later decision to plead guilty.  In any event, claims of
ineffective assistance of counsel related to bail are rendered
moot upon conviction and sentence. See King v. Grenier, No. 02
Civ. 5810, 2008 WL 4410109, at *54 (S.D.N.Y. Sept. 26, 2008)
(Peck, Mag. J.), adopted by 2009 WL 2001439 (July 8, 2009);
Hernandez v. Senkowski, No. 93 Civ. 5763, 1995 WL 604703, at *3
(E.D.N.Y. Oct. 5, 1995).

Likewise, Patterson does not identify any prejudice caused
by his counsel's alleged failure to advise him of his right to
appeal.  Indeed, Patterson does not show that his counsel even
had a duty to consult with him regarding the appeal.  When the
question on a § 2255 motion involves the petitioner's right to
appeal, the Court applies the test set forth in Roe v. Flores-
Ortega, 528 U.S. 470, 478-80 (2000).  A court applying the
Flores-Ortega test asks first, as an antecedent question:

10

whether counsel in fact consulted with the defendant about an appeal. Id. at 478. If no consultation occurred, the Court then asks the subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. Id. This subsidiary question is answered by a showing "either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

Patterson does not suggest that he reasonably demonstrated to counsel that he was interested in appealing. Instead, he merely states that he "wasn't notorizes [sic] of [his] appeal rights at sentencing nor during [his] entire time," (Pet. 5), and that his counsel "never notified [him] of any appeal rights whatsoever." (Aff. 1.) As noted above, this Court advised Patterson of his right to appeal at sentencing. (See Hr'g Tr. 10:10-11, Aug. 1, 2013.) Nevertheless, where the petitioner does not show that he reasonably demonstrated to counsel that he was interested in appealing, a petitioner "must show that (a) counsel knew or should have known of a nonfrivolous ground for appeal (and thus had a duty to consult), (b) counsel breached this duty by failing to consult, and (c) counsel's breach prejudiced the petitioner." Galviz Zapata, 431 F.3d at

11

397.  Patterson does not identify a nonfrivolous ground for
appeal and the record reveals none.  Moreover, Patterson pleaded
guilty and received a sentence within the Guidelines' range that
Patterson stated he understood applied, and within the range
from the Pre-Sentence Report, to which he did not object.  See
Sarroca v. United States, 250 F.3d 785, 788 (2d Cir. 2001) (per
curiam); see also Flores-Ortega, 528 U.S. at 480.  Consequently,
there is no evidence that a rational defendant would want to
appeal and Patterson's counsel had no duty to consult with him
regarding an appeal under Flores-Ortega.

Even if a duty did exist, Patterson cannot establish
prejudice under Strickland's second prong.  Under Flores-Ortega,
in order to meet Strickland's second prong, the defendant must
demonstrate that, but for counsel's deficient conduct, he would
have appealed.  Flores-Ortega, 528 U.S. at 484-86.  The prejudice
analysis "is not wholly dissimilar from the inquiry used to
determine whether counsel performed deficiently in the first
place":  "evidence that there were nonfrivolous grounds for
appeal or that the defendant in question promptly expressed a
desire to appeal will often be highly relevant in making this
determination." Flores-Ortega, 528 U.S. at 485-86.  A petitioner
is not, however, required to "'specify the points he would raise
were his right to appeal reinstated' . . . where there are other
substantial reasons to believe that he would have appealed." Id.

(quoting <u>Rodriquez v. United States</u>, 395 U.S. 327, 330 (1969)).
As noted above, the record reveals no nonfrivolous grounds for
appeal or that Patterson ever expressed a desire to appeal.  Nor
does the record reveal any other substantial reasons to believe
that Patterson would have appealed.  Because Patterson cannot
establish that he would have appealed but for counsel's
deficient conduct, he cannot demonstrate ineffective assistance
of counsel.

## 2. Patterson's Claims That His Counsel's Ineffective Assistance Led Him to Believe He Would Receive a Lesser Sentence

Patterson has not established that his counsel's alleged
failures that purportedly led him to believe he would receive a
lesser sentence prejudiced him.  In such cases, "the prejudice
issue is whether the defendant was aware of actual sentencing
possibilities, and if not, whether accurate information would
have made any difference in his decision to enter a plea."
<u>Chhabra v. United States</u>, 720 F.3d 395, 408 (2d Cir. 2013)
(internal quotation marks omitted).

As an initial matter, Patterson advised this Court that he
was satisfied with his counsel's representation and that he was
aware of the actual sentencing possibilities.  At his plea
hearing, Patterson stated that he understood that his sentence
could be up to ten years' imprisonment. (Hr'g Tr. 8:20-9:14,
Feb. 21, 2013.)  Moreover, he specifically inquired into the

13

Guidelines and, after the Court explained to Patterson that his
Guidelines' range was between 46 and 57 months' imprisonment,
but that the Guidelines are not mandatory, Patterson again
expressed his understanding. (Id. 11:1-12:9.)  Consequently,
Patterson understood his actual sentencing possibilities, and
any allegedly inaccurate advice did not cause him prejudice.

Even assuming that Patterson did not understand his actual
sentencing possibilities, accurate information would not have
made a difference in his decision to enter a plea.  The Second
Circuit has instructed district courts to consider the following
nonexhaustive list of factors when determining whether accurate
information would have affected the petitioner's decision to
enter a plea:  (1) whether the defendant pleaded guilty in spite
of knowing that the advice on which he claims to have relied
might be incorrect; (2) whether pleading guilty gained him a
benefit in the form of more lenient sentencing; (3) whether the
defendant advanced any basis for doubting the strength of the
government's case against him; and (4) whether the government
would have been free to prosecute the defendant on counts in
addition to those on which he pleaded guilty. Chhabra, 720 F.3d
at 408; see United States v. Arteca, 411 F.3d 315, 320-22 (2d
Cir. 2005).

Three of the four Chhabra factors weigh heavily in favor of
finding that accurate information would not have affected

14

Patterson's decision to enter a plea.  First, Patterson pleaded
guilty even though he knew that the Guidelines were not binding
on the Court and that the Court could vary upward from the
Guidelines to a maximum of ten years' imprisonment. (Hr'g Tr.
8:20-24; 11:1-12:9.)  Second, Patterson's decision to plead
guilty earned him a three-level reduction in his total criminal
offense level used to calculate the applicable Guidelines'
range, which would have been unavailable to him if he proceeded
to trial. See Arteca, 411 F.3d at 321.  Third, Patterson does
not offer a persuasive reason for doubting the strength of the
Government's case against him.  At his plea hearing, Patterson
admitted that he pleaded guilty because in truth and in fact he
was guilty and that "[o]n August 27, 2012[, he] possessed a
firearm after having been convicted of a felony offense.  [He]
knew it was illegal" and affirmatively answered the Court's
questions regarding the remaining elements of his offense. (Hr'g
Tr. 13:19-21, 14:21-16:5, Feb. 21, 2013.)  Patterson's solemn
declarations in open court carry a strong presumption of truth.
See Blackledge v. Allison, 431 U.S. 63, 74 (1977); United States
v. Hernandez, 242 F.3d 110, 112-13 (2d Cir. 2001) (per curiam).
While the fourth factor is not present here—i.e., no additional
open counts existed against Patterson—the record as a whole
indicates that, even if Patterson could show that he was unaware

of his actual sentencing possibilities, accurate information would not have affected his decision to enter a plea.

**B.  Patterson's Challenge to the Search Is Mooted By His Knowing and Voluntarily Guilty Plea**

Patterson also moves under § 2255 asserting that the search conducted at his residence lacked probable cause and represented a "conflict of interest" because it was conducted by both the New York Police Department and DOCCS.  The Court considered and denied Patterson's motion to suppress the physical evidence on February 14, 2013, based on the improper search ground raised again here. See Patterson, 2013 WL 592657, at *1-2.

Typically, Patterson's failure to directly appeal his conviction would bar him from raising this issue on collateral attack unless he had demonstrated cause and prejudice. See, e.g., Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) (per curiam).  The only ground for "cause" that Patterson can be viewed to have asserted is ineffective assistance of counsel, which for the reasons above, is meritless.

In any event, by knowingly and voluntarily pleading guilty, Patterson mooted his challenge to the search.  "[A] guilty plea conclusively establishes the factual predicate for the offense to which the defendant is pleading guilty." U.S. v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006) (per curiam) (discussing Menna v. New York, 423 U.S. 61 (1975)).  "Therefore, at least on

16

collateral attack of a judgment of conviction, under Tollet a petitioner may not assert pre-plea constitutional violations bearing on the valid establishment of his factual guilt." Id. (discussing Tollett, 411 U.S. at 266 (1973)).

Patterson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is a collateral attack on the judgment of his conviction for the offense that he pleaded guilty to on February 21, 2013.  That plea conclusively established the factual predicate for the offense, and it mooted Patterson's argument that the pre-plea search was improper.

## Conclusion

The Court has considered all of Patterson's arguments and has determined that they are without merit.  There is no need for an evidentiary hearing because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

For the reasons described above, the Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied.  The Clerk is respectfully directed to close the case and enter judgment for the respondent.

Petitioner has not made a substantial showing of the denial of a constitutional right and, therefore, a certificate of appealability shall not issue. See 28 U.S.C. § 2253(c).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated:     June 2, 2016
           New York, New York

                                    John F. Keenan
                             United States District Judge